Reid Laurence FELDMAN, Personally and as Administrator of the Estate of Nancy Hollander Feldman, Deceased,

v.

ALLEGHENY AIRLINES, INC.

Civ. No. 15670.

United States District Court,
D. Connecticut.

Memorandum of Decision April 9, 1976.

Judgment April 26, 1976.

**152**

Peter B. Cooper, New Haven, Conn., for plaintiff; John W. Douglas, C. R. Poehner, Washington, D. C., of counsel.

William R. Moller, Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.

### I. *History*

On June 7, 1971, Mrs. Nancy Feldman died in the crash of an Allegheny Airlines plane at New Haven, Connecticut. Her husband, as administrator of her estate, brought suit against the airline under the Connecticut wrongful death statute, Conn. Gen.Stat.Ann. § 52–555 (1976 Supp.). The airline conceded liability, and a court trial was held on the issue of damages. On August 14, 1974, this court entered judgment, awarding $444,056 to the plaintiff.[1] Allegheny appealed, and the Court of Appeals affirmed in part, and reversed and remanded in part.[2]

On January 20, 1975, a hearing was held on the remanded issues, namely, the percentage of time which Mrs. Feldman would have worked during the years she planned to devote to child rearing, a re-evaluation of the value of her loss of the enjoyment of life's activities, and a re-evaluation of her personal living expenses. In addition, the parties have filed briefs on a legal issue which was raised by the remand, namely the date from which interest should run after the entry of judgment on remand.

### II. *Part-time Work*

■ This court was directed to determine, as a question of fact, the percentage of time Mrs. Feldman would have devoted to her occupation during the eight years she intended to devote primarily to child rearing. After considering the testimony of her husband, the testimony of expert witnesses concerning the availability of part-time work for persons with Mrs. Feldman's qualifications, and after considering the amount of time which would necessarily be devoted exclusively to the demands of having and raising children, this court concludes that Mrs. Feldman would have devoted an average of three-eighths of her time during the eight years in question to part-time work in her home or office.

Due to the potential uncertainty and lack of continuity in these job opportunities however, the amount of her salary should not be increased during these years at the annual rate applied to her full-time salary. Consequently, I find that her salary would be the same at her first year of full employment after her eight years of part-time employment as it was at the time she gave up her full-time employment.

### III. *Value of Life's Activities*

■ Since the value of child rearing was originally included in the award made under this element of damages, it cannot be increased simply because the award for loss of earning capacity was decreased. I adhere to my original determination.

### IV. *Personal Living Expenses*

The difficulty of re-evaluating the level of personal living expenses in accord with the Court of Appeals' mandate has been considerably eased by the parties' ability to stipulate to the fact that the level would have been $4,000 in the base year and that it would have increased at the level of 3 per cent during each year in which the decedent had been fully employed.

This leaves only the questions of living expenses during the eight child-rearing years, and upon retirement, for my determination.

■ Since I have already held that Mrs. Feldman's salary would not have increased during the child-raising years, and that it was likely that she would be doing some of her part-time work at home, I find that her personal living expenses would not have increased, but would have remained constant during her eight years of child raising.

■ Finally, the defendant contends that since the Court of Appeals increased the

---

1. This opinion is reported at 382 F.Supp. 1271.

2. The opinion of the Court of Appeals is reported at 524 F.2d 384.

level of expenses while Mrs. Feldman would have been employed, the finding concerning her expenses ,upon retirement should likewise be increased. I disagree with this argument and adhere to my earlier finding.

## V. *Interest*

█ This leaves the legal issue of the date from which interest should run on this judgment. Since this was a diversity case, this question is governed by Connecticut law. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Connecticut law, as the defendant points out in its brief, the question is left to the reasoned discretion of the trial court. *Bertozzi v. McCarthy,* 164 Conn. 463, 466–67, 323 A.2d 553 (1973).

█ I conclude that interest should run from the date of the original judgment of this court, August 14, 1974. In making this determination I have taken into consideration the facts that liability has never been in dispute in this case, and that the original judgment of this court was substantially affirmed on appeal. The re-evaluations ordered by the Court of Appeals amount to only a small proportion of the original judgment of this court. Consequently, it would be unjust to deprive the plaintiff of the interest on the original award during the two years which the appeal and remand have been pending. This is especially true since, as the Court of Appeals noted, the changes amounted basically to a change in the conceptual framework, rather than to the dollar amount, and this court was free upon remand to increase the amount of the award, had this been justified.

Apart from the new factual determinations set forth herein, the court's prior findings remain unchanged.

On that basis the plaintiff shall compute the amount of damages in accordance with the method utilized by the court in its original decision. The plaintiff shall then submit such computation of damages together with a proposed form of judgment within 15 days. The defendant shall then have 5 days to file objections.

SO ORDERED.

## JUDGMENT

This cause having originally come on for trial before the court in 1974, and the issues having been duly tried, and the court having issued its judgment on August 14, 1974, ordering that plaintiff as the administrator of the estate of decedent Nancy Hollander Feldman, deceased, receive from the defendant the sum of $444,056, and thereafter, on appeal, the 'Court of Appeals for the Second Circuit having affirmed in major part and reversed in part the decision of the court and having remanded the cause in part to the court for further proceedings, the court having held such further evidentiary hearing on the remanded issues, and having rendered its Memorandum of Decision of April 9, 1976, reducing the amount of its previous award to plaintiff as the administrator of the estate of decedent, holding that interest on said award should run from the date of the original judgment on August 14, 1974, and directing the parties to submit computations as to the precise amount of damages to be awarded to the plaintiff in accordance with the court's decision, the parties having submitted and agreed to such computations, attached hereto as Schedule A, and the court having considered such submissions and having determined that the just amount of damages as of August 14, 1974 to be awarded to plaintiff as administrator of the estate of the decedent to be the sum of THREE HUNDRED TWENTY–NINE THOUSAND, ONE HUNDRED FORTY–SEVEN DOLLARS ($329,147.00), as just damages for the wrongful death of Nancy Hollander Feldman and having held that interest on such damages should run from the date of the original judgment on August 14, 1974 to the date of payment;

IT IS ORDERED AND DECREED,

1. That the plaintiff as the administrator of the estate of Nancy Hollander Feldman, deceased, receive of defendant the sum of THREE HUNDRED TWENTY–NINE THOUSAND, ONE HUNDRED FORTY–SEVEN DOLLARS ($329,147.00);

2. That interest on the aforesaid award run from August 14, 1974 to the date of payment; and

3. That payment be made within twenty days from the date of entry of this judgment.

### SCHEDULE A

Line 1. Loss of Future Earning Capacity—
Original District Court Award
(p. 79 of slip opinion) ......... $499,953.00

Line 2. Total Discounted Earnings During
Eight Child-Rearing Years
(p. 60 of slip opinion; summary
P. Ex. 23, p. 7) ............... $ 93,557.00

Line 3. 37½ percent of line 2
(p. 2 of 4/9/76 opinion; summary
P. Ex. 23, p. 7) .............. $ 35,083.88

Line 4. Amount of Reduction in Loss of Future
Earning Capacity
(line 2—line 3) .............. $ 58,473.12

Line 5. Newly Computed Loss of Future
Earning Capacity
(line 1—line 4) .............. $441,479.88

Line 6. Destruction of Capacity to Enjoy
Life's Activities
(p. 79 of slip opinion; p. 3 of
4/9/76 opinion) ............ $100,000.00

Line 7. Personal Living Expenses—Original
District Court Finding
(p. 79 of slip opinion) ......... $155,897.00

Line 8. Newly Computed Living Expenses
(pp. 3–4 of slip opinion; P. Ex. 23,
Table C–1) ................. $212,333.00

Line 9. Net Amount of Damages as of
August 14, 1974
(line 5 + line 6—line 8) ........ $329,147.00